# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | | |
|---|---|---|
| **DAVID OPPENHEIMER,** | ʹ | |
| Plaintiff, | ʹ | CA No. _____ |
| | ʹ | |
| v. | ʹ | |
| | ʹ | |
| **EPISCOPAL COMMUNICATORS, INC.** | ʹ | |
| | ʹ | |
| Defendants. | ʹ | **JURY DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, David Oppenheimer ("Oppenheimer" or "Plaintiff"), for his complaint against Defendant, Episcopal Communicators, LLC ("EC" or "Defendant") alleges:

## JURISDICTION/VENUE

1. Oppenheimer's claims arise under the copyright laws of the United States, 17 U.S.C. 101 *et. seq.*, (hereinafter the Copyright Act.).

2. Subject matter and personal jurisdiction is vested in this Court pursuant to 28 U.S.C. 1338. Additionally, this Court has subject matter jurisdiction under 28 U.S.C. 1331 inasmuch as this claim arises under the copyright laws of the United States. This Court has personal jurisdiction over Defendant because it has purposefully availed itself of the privileges of the forum state – by using an aerial photograph created within North Carolina, of a landmark North Carolina lake (Lake Kanuga) and surrounding landscape – in an advertisement for a conference it held in the forum state, and which was directed at citizens

1

of North Carolina. This conference affected both North Carolina citizens and businesses, including but not limited to the marketing, sales, and tourism initiated by the conference. Additionally, Oppenheimer's claims arise entirely and directly out of Defendant's activities directed at the forum state, and thus, the exercise of justice is constitutionally reasonable in the forum state.[1] Venue in this judicial district is therefore proper pursuant to 28 U.S.C. 1400(a) and 28 U.S.C. 1391(b) and (c), and the "*Calder* effects test" as laid down by the U.S. Supreme Court (see *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)).

## THE PARTIES

3. Oppenheimer is a citizen of North Carolina who resides in and has a principal place of business in Asheville, Buncombe County, North Carolina. He is now and for many years has been engaged in the business of professional photography in North Carolina.

4. EC is a District of Columbia corporation, and will receive actual notice of this Complaint by service upon its registered agent, R Lance Elliot, at 3420 16th Street NW, APT 208, Washington, DC 20010, or at 2950 Van Ness Street NW, Suite 809, Washington, DC 20008.

## INTRODUCTORY FACTS

5. Oppenheimer is a professional photographer, and is the author (photographer) of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all right, title and interest in and to the copyrights in the photograph at issue in this matter (the "Work"). See **Exhibit 1**.

---

[1] See *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002), cert. denied, 537 U.S. 1105 (2003).

6. Oppenheimer makes his photographic works available for print sales and licensing online at his website https://performanceimpressions.com.

7. Oppenheimer has complied in all respects with Title 17, U.S.C. § 102, *et seq.,* and all other laws governing federal copyright applicable to the Work and registered the copyrights with the Register of Copyrights at the U.S. Copyright Office. Attached hereto as **Exhibit 2** is the certificate of registration for the work entitled "Aerial Photography Taken on October 11, 2014 by David Oppenheimer," Registration No. VAu 1-190-968, which includes the Work at issue in this matter. Oppenheimer's copyrights in the above-described Work are presently valid and subsisting, and were valid and subsisting from the moment of their creation, and all conditions precedent to the filing of this suit have occurred.

8. For many years, it has been Oppenheimer's custom and business practice to display his copyright management information (hereinafter, "CMI") on his copyrighted photographs when they are first published by him, and thereafter. The Work at issue in this case, as first published, prominently displayed his CMI in the caption and with a watermark, as well as embedded in the metadata of the Work. Additionally, because Defendants are active members of the digital marketing and publication industries, upon information and belief, they are well-versed in intellectual property and rights-management. Thus, Defendants were on notice and appreciated that the Work was copyright-protected.

9. Fewer than three years before this filing, Oppenheimer discovered the infringement of his protected image on Defendants' website, in the manner depicted on

**Exhibit 3**. Oppenheimer further discovered that Defendants were displaying his Work on at least the following URLs:

- http://www.episcopalcommunicators.org/event-2729332;
- http://www.episcopalcommunicators.org/resources/Pictures/Kanuga%20lake.png;
- http://episcopal-communicators.wildapricot.org/EpisComm18-Registration; *and*
- http://episcopal-communicators.wildapricot.org/resources/Pictures/Kanuga%20lake.png.

10. Upon information and belief, EC located and accessed Oppenheimer's Work on the World Wide Web, scraped the image, and then utilized it in advertising materials on the web – and upon information and belief, elsewhere – in order to advertise, market, or otherwise promote its "Pause.Connect.Grow" Conference[2] held at the Kanuga Conference Center in Hendersonville, North Carolina. Upon information and belief, due to the success of its advertising and marketing campaign to North Carolina citizens and businesses for this North Carolina event (utilizing Oppenheimer's Work without license or authorization), EC received gross revenue approaching $100,000.

11. On or about March 26, 2018, Oppenheimer's attorney sent EC a letter about its infringement of the copyrighted Work, and requested information about the nature and extent of its infringing activities (**Exhibit 4**).

12. Thereafter, Oppenheimer's attorney made several attempts to engage EC in settlement negotiations, but settlement efforts were unsuccessful on all fronts.

---

[2] As interesting and ironic as it is, the topic of one of the courses at this conference included the topic, *"website best practices…"*

## CAUSES OF ACTION
## COUNT I – NON-WILLFUL COPYRIGHT INFRINGEMENT

13. Oppenheimer re-alleges and incorporates paragraphs 1 – 12 above as if recited *verbatim*.

14. Defendant, without knowledge or intent, has infringed Oppenheimer's copyrights in and to the Work shown on Exhibit 1 to this Complaint by scanning, copying, reproducing, distributing, publishing and/or otherwise using, unauthorized copies of said photographs within the United States in violation of Title 17 USC §101 *et seq.*

15. Upon information and belief, Defendant has benefitted from its infringements of the Work, while Oppenheimer has suffered and will continue to suffer monetary damages, irreparable injury to his business including dilution of the market value of the Work, damage to his reputation and goodwill; therefore, Oppenheimer is entitled to injunctive relief, damages, other relief described in the Act, and set forth below.

## COUNT II – RECKLESS/WILLFUL COPYRIGHT INFRINGEMENT

16. Oppenheimer re-alleges and incorporates paragraphs 1 – 15 above as if recited *verbatim*.

17. Alternatively, Defendants recklessly/willfully infringed Oppenheimer's copyrights in and to the Work shown on Exhibit 1 to this Complaint by scanning, copying, reproducing, distributing, publishing and/or otherwise using, unauthorized copies of said photographs within the United States in violation of Title 17 USC §101 *et seq.*

18. Because when published, Oppenheimer's Work prominently displayed his CMI in the caption, with a facial watermark, as well as embedded within the metadata of the Work, and because EC appears to be well-versed in intellectual property and rights

management – it knew or should have known not to use the Work without license, yet infringed it anyway.

19. Upon information and belief, Defendant has benefitted from its infringements of the Work, while Oppenheimer has suffered and will continue to suffer monetary damages, irreparable injury to his business, reputation, and goodwill, and dilution in the marketplace; therefore, Oppenheimer is entitled to injunctive relief, damages, other relief set forth in the Act.

## COUNT III
## VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

20. Oppenheimer re-alleges and incorporates paragraphs 1 – 19 above as if recited *verbatim*.

21. As is his pattern and practice, Oppenheimer clearly marked the Work with his CMI on the face of the image, in a legible caption just below the image, and within the metadata of the image. Oppenheimer published the Work with the following: facial CMI including a "©" and another proper notice of copyright in an adjacent caption; CMI in the metadata including proper notices of copyright; notices declaring "All Rights Reserved;" as well as instructions, Oppenheimer's address, phone number, email address, and the Performance Impressions website URL. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view his works appreciate that he owns all rights and title to them, and that those who wish to license them have a way of inquiring about fees, and/or paying license fees.

22. On information and belief, EC, its board member,[3] or third parties at its direction and behest (discovery will reveal which), violated the DMCA by removing Oppenheimer's CMI from the Work.

23. In accomplishing the infringements identified above, and upon information and belief, EC, its employee, or a third party at its behest, intentionally removed and/or cropped-off the CMI from the face of Oppenheimer's Work, as well as from the metadata of the Work.

24. Upon information and belief, ED distributed copies and/or derivatives of Oppenheimer's Work knowing that such CMI had been cropped-off the face of it or had been otherwise removed, all without authorization.

25. At the time that Oppenheimer's CMI was cropped-off or otherwise removed from the Work, and at the time the Work was distributed with its CMI cropped-off and/or removed, EC knew -- or had reasonable grounds to know -- that such behavior would induce, enable, facilitate, and/or conceal infringements of Oppenheimer's copyrights.

26. Oppenheimer is entitled to and therefore seeks recovery of statutory penalties from EC not less than $2,500, and not exceeding $25,000 for each act committed in violation of his rights under 17 U.S.C. § 1203(c)(3)(B).

27. Pursuant to 17 U.S.C. § 1203(b)(5), Oppenheimer is entitled to recover, and therefore seeks the recovery of his Lodestar costs, including reasonable attorney's fees.

---

[3] Likely, William Slocumb.

## CAUSATION/DAMAGES

28. As a result of the Defendant's above-described acts of copyright infringement and violations of the DMCA, Oppenheimer has sustained actual damages in an amount not yet ascertained, but which discovery will illuminate. Such actual damages include, but are not limited to, dilution of the market value of the Work (absence of the CMI), lost profits and/or lost licensing revenue (potential license fees that may have been lost because of absence of CMI), disgorgement of the Defendant's profits attributable to its infringements, statutory damages under Title 17 as well as statutory penalties for the DMCA violations; research time tracking-down and documenting the infringements, research time tracking-down and emailing and calling the infringers, and attorneys' and paralegals' time trying to amicably resolve the matter, and for the drafting, filing and service of this complaint, citations, waivers of service and related documents.

## RELIEF REQUESTED

29. Oppenheimer demands an accounting of EC's activities in connection with its infringements of his copyrights in and to the Work, as well as disgorgement of profits attributable to the infringing activities, as well as all other benefits realized by Defendant through its infringing activities.

30. Oppenheimer is entitled to recover and therefore seeks recovery of actual damages, plus all of Defendant's profits attributable to the infringements.

31. Alternatively, and solely at Oppenheimer's post-verdict election, because the image was registered prior to Defendant's infringements, Oppenheimer is entitled to and seeks recovery of statutory damages up to but not exceeding $150,000 (One Hundred Fifty

Thousand Dollars), plus costs, including costs and Lodestar attorney's fees, pursuant to 17 U.S.C. § 504(c) and §505.

32. Oppenheimer is also entitled to recover, and therefore seeks the recovery of actual damages plus any profits and/or benefits realized by Defendant through its violations of the DMCA pursuant to 17 U.S.C. §1203(c)(2).

33. Alternative to actual damages under the DMCA, at Oppenheimer's post-verdict election, and pursuant to 17 U.S.C. §1203(c)(3)(B), Oppenheimer is entitled to and seeks to recover statutory damages under the DMCA not less than $2,500 and not exceeding $25,000 for each act committed by Defendant in violation of 17 U.S.C. §1202, plus Oppenheimer's Lodestar attorney's fees, pursuant to 17 U.S.C. §1203(b)(5).

**Oppenheimer DEMANDS JUDGMENT AS FOLLOWS:**

34. That Defendant, its agents, employees and/or servants be enjoined *pendente lite* and permanently from infringing Oppenheimer's copyrights in any manner whatsoever, and from publishing through any visual media, and from selling, marketing or otherwise distributing any of his images, and from using his images in sales, marketing, and/or advertising;

35. That Defendant be required to deliver-up, under oath, for impounding during the pendency of this action, and for destruction thereafter, all images which infringe Oppenheimer's copyrights, and all prints, film negatives, magnetic tapes, digitally scanned and/or stored images, and all other articles by means of which such infringing copies may be reproduced, which are in the possession or under the direct or indirect control of the Defendant;

36. That Defendant provides an accounting of all gains, profits and advantages derived by it as a result of the willful and unlawful acts of copyright infringement above described;

37. That Defendant be ordered to pay over to Oppenheimer his actual damages sustained, in addition to all its profits attributable to the infringements, and which are not taken into account in computing Oppenheimer's actual damages incurred as a result of Defendant's copyright infringements described herein, pursuant to 17 U.S.C. § 504(b);

38. In the alternative, and at Oppenheimer's election after verdict, that Defendant be ordered to pay maximum statutory damages in the amount $150,000 for the Work infringed pursuant to 17 U.S.C. § 504(c), or such other amount as the jury may deem appropriate;

39. That in addition to the above, Defendant be ordered to pay over to Oppenheimer actual damages for each DMCA violation, plus all of Defendant's profits that are attributable to each such violation – which are not taken into account in computing Oppenheimer's actual damages – pursuant to 17 U.S.C. § 1203(c)(2);

40. That alternative to actual damages under the DMCA, and at Oppenheimer's election after verdict, Defendant be: 1) ordered to pay to Oppenheimer the maximum statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B) for each violation; and 2) permanently enjoined and prohibited from employing, altering, cropping, mutilating or otherwise utilizing Oppenheimer's copyrighted images or their copyright management information in any manner or media whatsoever, pursuant to 17 U.S.C. § 1203(b)(1);

41. That Defendant be ordered to pay to Oppenheimer all his Lodestar costs including reasonable attorney's fees; *and*

42. That Oppenheimer recover judgment for such other and further relief as this court deems just and proper, including maximum pre and post judgment interest on all sums due.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

            **LEJUNE LAW FIRM**

By:  *s/ Dana A. LeJune*
   Dana A. LeJune
   Texas Bar: 12188250
   NC Bar: 49025
   Scott M. Francis
   Texas Bar: 24088795
   1225 North Loop W
   Suite 825
   Houston, Texas 77008
   713.942.9898 Phone
   713.942.9899 Facsimile
   dlejune@triallawyers.net
   scott@triallawyers.net